OPINION OF THE COURT
Per Curiam.
Donald William Leo was admitted to the New York bar in 1967. He tendered his resignation as an attorney in January 2004 in the midst of a disciplinary investigation into alleged escrow violations. In connection with his resignation, Leo acknowledged that he “failed to properly preserve the amount *363 of funds which should have been on deposit in his escrow account” and that he would be unable to “successfully defend himself on the merits” of any related disciplinary charges (Matter of Leo, 9 AD3d 218, 219 [2d Dept 2004]).
After tendering his resignation, Leo sold his law practice to his son. According to their written agreement, the purchase price “d[id] not include any accounts receivable” due for “services rendered” by Leo prior to the sale. Instead, those funds would be “promptly paid and delivered” to Leo as payment was received on contingency fee cases. These pending matters—more than 550 in total—were listed in a schedule attached to the purchase agreement, along with the corresponding percentage of the fee to be allocated to Leo in each case.
Shortly after the sale, Leo sent letters to all of his clients indicating that he was “relocating” to Tennessee and that he was “transferring [his] law practice and law office assets” to his son. The letter stated, in relevant part:
“If you decide to retain other counsel kindly . . . have him or her contact our office . . .
“If you wish to continue with Don and our new team of associates there is no need for you to contact us at this time” (emphasis added).
Three months later, the Appellate Division “accepted” Leo’s proffered resignation and Leo was formally disbarred {id. at 219). Among other things, Leo was ordered to comply with 22 NYCRR 691.10—the Second Department’s rule governing the conduct of disbarred, suspended, and resigned attorneys {id. at 220).
Seven years after his disbarment, Leo applied for reinstatement. The Appellate Division held the motion in abeyance and referred the matter to the Committee on Character and Fitness (2012 NY Slip Op 61926[U]). A two-member subcommittee was assigned to conduct an investigation and a hearing was held.
During the hearing, the subcommittee members inquired into the notification that Leo had provided to clients while his resignation was pending. According to Leo, by the time the Appellate Division accepted his resignation, all of his clients had decided to either continue with his son or to retain new counsel. Leo stated that, under the relevant rule, he did not need to send a subsequent notice or otherwise notify his “former” clients of his disbarment.
*364 Leo was also questioned about certain payments he received from his son arising from the sale of Leo’s law practice. Leo was unable to provide an accounting of the amounts he had received to date, and he was unable to specify which sums, if any, remained outstanding. Leo testified that, for the first few years following the sale, Leo’s son was merely “reimbursing” him for “out of pocket disbursements” that Leo had “laid out prior to leaving.” Leo estimated that these reimbursements— which were not declared as income on his tax returns or mentioned in the purchase agreement—totaled “[e]lose to $500,000.” With regard to the remaining sums, Leo stated that he had “not made a determination” whether to allocate those payments to the purchase price or to the fees owed from contingency cases. Although 22 NYCRR 691.10 requires that legal fees and disbursements received post-disbarment must be “fixed by the court,” Leo had not applied for a court order fixing compensation.
The subcommittee was “troubled by the testimony” at the first hearing and “decided to recommend against admission.” However, shortly after the hearing, Leo’s counsel requested a continuance. A second hearing was held nearly 18 months later.
During the second hearing, Leo testified that he had met with his son and reviewed all of the records relating to the payments he had received. Leo then filed motions in various counties seeking nunc pro tunc orders fixing legal fees and recoverable disbursements. The motions were granted, and copies of the orders were filed as exhibits at the second hearing.
The subcommittee thereafter concluded that Leo possessed “the present character and fitness to practice law in New York.” Although the subcommittee noted that Leo’s actions “did not comply with the rules relating to personal injury cases and rules relating to compensation to disciplined attorneys,” it nonetheless concluded that Leo had “shown, by his determined actions, that he is willing to work hard to regain th[e] privilege” of practicing law. The subcommittee recommended reinstatement.
The full Committee on Character and Fitness disagreed and voted to recommend that Leo’s motion for reinstatement be denied. In its letter dated May 2, 2014, the full Committee expressed concerns that (1) Leo’s letter notifying clients that he was relocating did not conform to the applicable rules, and *365 (2) Leo’s failure to seek court approval of fees and disbursements until after the subcommittee had noted the irregularity did not demonstrate the requisite character and fitness for reinstatement.
The Appellate Division subsequently denied Leo’s motion for reinstatement (2014 NY Slip Op 94061[U] [2d Dept 2014]). After considering the entire record, including Leo’s papers and the report of the Committee on Character and Fitness, the Appellate Division concluded that Leo did not “demonstrate the requisite fitness and character to practice law” (id.).
We granted leave to appeal (25 NY3d 914 [2015]) and now affirm.
 In the Second Department, an applicant seeking reinstatement to the bar must show “by clear and convincing evidence that [the applicant] has fully complied with the provisions of the order disbarring or suspending him or her . . . and that he or she possesses the character and general fitness to practice law” (former Rules of App Div, 2d Dept [22 NYCRR] § 691.11 [c] [1]). The Appellate Division “is the fact finder on issues of character and fitness and its discretion is inclusive” (Matter of Anonymous, 79 NY2d 782, 783 [1991]; see Matter of Citrin, 94 NY2d 459, 465 [2000]). Indeed, the Appellate Division is best situated to assess an applicant’s compliance with the applicable disbarment order and to determine whether, in light of the misconduct giving rise to his or her disbarment, the applicant’s subsequent conduct demonstrates the requisite character and fitness for readmission. Accordingly, our standard of review is limited to whether the Appellate Division abused its discretion in denying Leo’s motion for reinstatement. We discern no abuse of discretion here.
The record here includes evidence that Leo failed to comply with the provisions of his disbarment order, including the provision requiring compliance with 22 NYCRR 691.10. Specifically, section 691.10 (b) makes clear that, in the Second Department, “[a] disbarred, suspended or resigned attorney” may only be compensated “on a quantum meruit basis for legal services rendered and disbursements incurred” prior to his or her removal from the bar, and that “[t]he amount and manner of payment” must be “fixed by the court” (former Rules of App Div, 2d Dept [22 NYCRR] § 691.10 [b] [emphasis omitted]). Here, Leo received payment for legal fees and disbursements *366 incurred prior to his disbarment, but he did not obtain the required court orders until his error was uncovered by the subcommittee. Moreover, at his first hearing, Leo was unable to provide an accurate accounting of the payments he had received, nor could he specify whether the sums constituted disbursement reimbursements, fees for legal services rendered, or installments towards the purchase price of his firm. In the absence of the required court orders and an accurate accounting, Leo was not in compliance with section 691.10 (b).
Leo’s argument regarding his pre-disbarment client notification is also unavailing. Under section 691.10, “[a] disbarred, suspended or resigned attorney” must provide notice to “all clients being represented in pending matters ... of his disbarment, suspension or resignation and his consequent inability to act as an attorney” (id. § 691.10 [c]-[d]). In this case, Leo informed his clients, in advance of his anticipated disbarment, that he was “transferring” his law practice to his son, but Leo did not send a subsequent notice or otherwise inform clients of his eventual disbarment. Even if Leo did not violate section 691.10—Leo had no “current” clients at the time of his disbarment—his notification could reasonably be considered misleading to the extent it implied that Leo was merely “relocating” and would remain involved in the practice.*
In sum, on this record, there is no basis to disturb the Appellate Division’s determination that Leo did not “demonstrate the requisite fitness and character to practice law.”
We have considered Leo’s remaining contentions and find them to be without merit.
Accordingly, the order of the Appellate Division should be affirmed, without costs.

 We do not imply that Leo violated 22 NYCRR 691.10 (c) and (d), or “refuse[ ] to conclude” that he did not (concurring op at 366). Rather, in reviewing the Appellate Division’s assessment of the entire record, we confine our decision—in accordance with our limited standard of review—to issues that are necessary to the resolution of this appeal. As the concurrence necessarily concedes by joining in the result, this issue is not.