Matter of Castro (2021 NY Slip Op 07053)





Matter of Castro


2021 NY Slip Op 07053


Decided on December 16, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:December 16, 2021

PM-178-21
[*1]In the Matter of William Castro, a Disbarred Attorney. Committee on Professional Standards, Now Known as Attorney Grievance Committee for the Third Judicial Department, Petitioner; William Castro, Respondent. (Attorney Registration No. 2330074.)

Calendar Date:October 18, 2021

Before:Garry, P.J., Lynch, Clark, Pritzker and Reynolds Fitzgerald, JJ.

Monica A. Duffy, Attorney Grievance Committee for the Third Judicial Department, Albany (Alison M. Coan of counsel), for petitioner.
William Castro, Miami, Florida, respondent pro se.



Per Curiam.
Respondent was admitted to practice by this Court in 1990 and was also previously admitted in Florida in 1981. By June 1995 order of this Court, respondent's name was stricken from the roll of attorneys in this state upon his conviction of multiple federal felonies (216 AD2d 782 [1995]). Specifically, respondent had been convicted in the United States District Court for the Southern District of Florida of multiple counts of mail fraud, one count of bribery and one count of conspiracy to commit racketeering in connection with a kickback scheme involving a Florida Circuit Court Judge (see United States v Castro, 89 F3d 1443 [11th Cir 1996], cert denied 519 US 1118 [1997]). In November 1998, the Supreme Court of Florida disbarred respondent for a 10-year period nunc pro tunc to May 1994 when he was first suspended for his criminal conduct (The Florida Bar v Castro, 728 So 2d 205 [Fla 1998]). Respondent eventually sought his reinstatement in Florida, and his motion was unsuccessful (Florida Bd. of Bar Examiners re Castro, 87 So 3d 699 [Fla 2012], cert denied 568 US 932 [2012]). Respondent now moves for his reinstatement in this state (see Rules for Attorney Disciplinary Matters [22 NYCRR] § 1240.16 [a]; Rules of App Div, 3d Dept [22 NYCRR] § 806.16 [a]). Petitioner submitted an affirmation in opposition to the motion and respondent thereafter submitted a reply to that opposition.
Based upon our review of the parties' submissions, we referred respondent's application to a subcommittee of the Committee on Character and Fitness for a recorded interview and report pursuant to Rules of the Appellate Division, Third Department (22 NYCRR) § 806.16 (a) (5). The subcommittee issued its full report in September 2021, in which the majority recommends denial of the motion and the dissenting member recommends that respondent be reinstated. Respondent has submitted his response to the report, and with no further submissions forthcoming, the matter is now ripe for our disposition.
Initially, we find that respondent has met his threshold burden of submitting the required documentation in support of his application, including proof that he has successfully completed the Multistate Professional Responsibility Examination within one year preceding his application (see Rules for Attorney Disciplinary Matters [22 NYCRR] § 1240.16 [b]). As to the merits of his application, we begin by noting that each and every respondent seeking reinstatement from disbarment "must establish, by clear and convincing evidence, (1) that he or she has complied with the order of [disbarment] and the applicable rules of the Court, (2) that he or she possesses the requisite character and fitness for the practice of law, and (3) that his or her reinstatement 'would be in the public interest'" (Matter of Jing Tan, 164 AD3d 1515, 1516-1517 [2018], quoting Rules for Attorney Disciplinary Matters [22 NYCRR] § 1240.16 [a]). The record contains clear and convincing evidence that respondent [*2]has demonstrated his compliance with the provisions of his order of disbarment and this Court's rules regulating the conduct of disbarred attorneys (see Rules for Attorney Disciplinary Matters [22 NYCRR] § 1240.15). Accordingly, we turn to the inquiries concerning respondent's character and fitness and the public interest in his reinstatement.
Our inquiries into a respondent's character and fitness and the public interest in his or her reinstatement are fact-specific and necessarily consider both the respondent's conduct that led to his or her disciplinary sanction as well as the conduct that followed the disciplinary order (see generally Matter of Leo, 28 NY3d 360, 365 [2016]; Matter of Matthews, 187 AD3d 1482, 1484 [2020]). These principles, in effect, require those attorneys seeking reinstatement from significant misconduct, such as respondent, to meet a high threshold in order to meet their burden on these factors clearly and convincingly. That being said, we note that, unlike respondent's home jurisdiction of Florida, this state does not have a statute or regulation allowing for the permanent disbarment of an attorney (see generally Matter of Matthews, 187 AD3d at 1484; Matter of Canale, 162 AD3d 1455, 1456 [2018]). As such, there is no actual bar to a disbarred attorney seeking reinstatement, regardless of the nature of the conduct that led to his or her disbarment, so long as he or she can clearly and convincingly meet the requirements of Rules for Attorney Disciplinary Matters (22 NYCRR) § 1240.16 (cf. Matter of Cammarano, 169 AD3d 1251, 1251-1252 [2019]).
We begin by noting that respondent has demonstrated sincere remorse for his past criminal conduct. To be sure, respondent has made no excuses for his past conduct, willingly acknowledging that he was deserving of both the criminal penalties he received along with the resulting sanctions to his license to practice law in this state and in his home jurisdiction. We also recognize that respondent has dedicated himself to public service in his community. Respondent's application materials and the testimony adduced at his subcommittee hearing provide numerous accounts of his commitment to various charitable organizations that aid underprivileged families, and he has also dedicated his time to the foster family program in his community, having served both as a foster parent and on foster care review panels ensuring that other foster children are properly cared for.[FN1] Further, respondent has committed time to lecturing future members of the bar in his community, as well as current licensed attorneys, about how to avoid the pitfalls that cost him his freedom and his law licenses. Finally, respondent does not report any financial concerns that might serve as an impediment to his reinstatement and attests that he does not suffer from, and has not been treated for, any condition or impairment which in any way impairs or limits his ability to practice law. As to his fitness, respondent [*3]supports his application with letters from various attorneys in his community offering strong accounts of respondent's proficiency in the law, which he has demonstrated in his current work as a paralegal. Altogether, we find that respondent has provided clear and convincing evidence of his character and fitness for reinstatement, and turn to the final inquiry on his motion (see Matter of Chechelnitsky, 194 AD3d 1241, 1242 [2021]).
Turning, then, to the public interest in respondent's reinstatement, we must determine both that no detriment would inure to the public from his reinstatement and that his return to practice would provide a tangible benefit to the public (see Matter of Krouner, 173 AD3d 1428, 1430 [2019]). In considering the potential detriment to the public, we rightfully must take into consideration the criminal conduct that led to respondent's disbarment and the serious impact it may have on the public's confidence in the legal profession. However, respondent's burden in this respect is not insurmountable, it is merely heightened. To this point, noting the many factors before us concerning respondent's remorse and community service, we find that respondent has sufficiently atoned for his actions and has demonstrated a longstanding and, perhaps more importantly, ongoing commitment to lawfully serving his community. To this point, respondent's actions since his release from prison were not undertaken with an eye towards his eventual bid for reinstatement to the practice of law; rather, he immersed himself in these various endeavors in a simple effort to change who he was, which is reflective of the lasting power of his efforts. We also note that respondent has surrounded himself with a support system that allays our concerns that his past misconduct would ever be repeated. Accordingly, we are satisfied that no detriment would inure to the public from allowing respondent to resume practicing law in this state (see Matter of Canale, 162 AD3d at 1457; see also Matter of Krouner, 173 AD3d at 1429; Matter of Brollesy, 169 AD3d 1347, 1348-1349 [2019]; compare Matter of Edelstein, 150 AD3d 1531, 1531-1532 [2017]). As to the tangible benefit, respondent has assured this Court that he intends to continue his community service and, with his ability to practice law restored, has vowed to provide valuable legal representation to underrepresented migrant communities.[FN2] We therefore find that respondent has met his burden and, in doing so, take the opportunity to remind him of his pro bono obligations to this state's bar (see Matter of Attorneys in Violation of Judiciary Law § 468-a [Squires], 153 AD3d 1511, 1513 [2017]). However, while we have determined that respondent should be reinstated, we cannot ignore his lengthy separation from the practice of law, which now spans over 26 years, notwithstanding his recent work as a paralegal. With that in mind, we believe that it would benefit both respondent and the public to place certain conditions [*4]on his return to practice (see Matter of Krouner, 173 AD3d at 1430; Matter of Canale, 162 AD3d at 1456; Matter of Brollesy, 169 AD3d at 1349), and therefore reinstate respondent to the practice of law in accordance with the conditions provided for in this order.
Garry, P.J., Lynch, Clark, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that respondent's motion for reinstatement is granted; and it is further
ORDERED that respondent is reinstated as an attorney and counselor-at-law in the State of New York, effective immediately; and it is further
ORDERED that respondent's reinstatement to the practice of law shall be conditioned upon the following requirements: (1) respondent shall not engage in the solo practice of law and shall associate himself with an attorney of this state with at least five years of experience; and (2) respondent shall complete 26 hours of continuing legal education within one year of the date of entry of this order, in addition to any other continuing legal education requirements to which he is subject, and respondent shall provide petitioner with copies of certificates reflecting his compliance with this condition on the one-year anniversary of this order; and it is further
ORDERED that respondent may move this Court to remove the foregoing conditions after two years from the date of this order.



Footnotes

Footnote 1: To this point, in its order denying his motion for reinstatement, the Supreme Court of Florida noted that respondent had amassed over 13,000 hours of community service in the 18 years preceding his application for reinstatement in that state (see Florida Bd. of Bar Examiners re Castro, 87 So 3d at 703). However, the Court also determined that "no demonstration of rehabilitation would ever suffice to allow [respondent]'s readmission to the legal profession" (id. at 702), a principle that is not dispositive to our inquiry (see Matter of Matthews, 187 AD3d at 1484).

Footnote 2: This Court cannot speak to whether respondent will be able to utilize his law license in this state to practice immigration law. We do note, however, that there is no shortage of underrepresented migrants in this state who would benefit from respondent's stated commitment to serving that population.