Matter of Paragano (2023 NY Slip Op 00478)

Matter of Paragano

2023 NY Slip Op 00478

Decided on February 2, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 2, 2023

PM-20-23
[*1]In the Matter of Vincent Dominick Paragano, a Disbarred Attorney. Committee on Professional Standards, Now Known as Attorney Grievance Committee for the Third Judicial Department, Petitioner; Vincent Dominick Paragano, Respondent. (Attorney Registration No. 2133957.)

Calendar Date:August 15, 2022

Before:Garry, P.J., Lynch, Aarons, Pritzker and Fisher, JJ.

Monica A. Duffy, Attorney Grievance Committee for the Third Judicial Department, Albany (Michael K. Creaser of counsel), for petitioner.
Foley Griffin, LLP, Garden City (Chris McDonough of counsel), for respondent.

Per Curiam.
Respondent was admitted to practice by this Court in 1987, following his 1980 admission to the practice of law in his home state of New Jersey. By March 2013 order, respondent was permanently disbarred in New Jersey by the Supreme Court of New Jersey due to his involvement in a fraudulent real estate transaction, his repeated misrepresentations to his former business partners and his attempt to conceal his misconduct by creating and submitting fictitious documents to disciplinary authorities (see Matter of Paragano, 213 NJ 248 [2013]). By September 2013 order, we similarly disbarred respondent as a consequence of his professional misconduct in New Jersey (109 AD3d 1045 [3d Dept 2013]).[FN1] Subsequently, respondent moved for his reinstatement in New York. Petitioner opposed the motion by affirmation of counsel and, with leave of the Court, respondent's counsel filed a reply. Following our initial review, the matter was referred to a Character and Fitness subcommittee for hearing and report (see Rules of App Div, 3d Dept [22 NYCRR] § 806.16 [a] [5]).
Following the hearing, the three-member subcommittee filed a report in July 2022 which unanimously recommended that respondent's motion for reinstatement be denied. Respondent has since been heard in response to the subcommittee report by affirmation of counsel and his own affidavit with exhibits and, upon our direction, the parties have appeared before us for argument. Having now considered the entirety of the parties' submissions and the full record before us, we conclude, for the reasons that follow, that respondent has satisfied his high burden of establishing his entitlement to reinstatement (see Rules for Attorney Disciplinary Matters [22 NYCRR] § 1240.16 [a]), but that such reinstatement shall be conditioned upon several stringent requirements.
To begin, we have first determined that respondent has complied with both the terms of the order of suspension and all applicable rules of the Court (see Matter of Njogu, 175 AD3d 800, 800 [3d Dept 2019]; Matter of Attorneys in Violation of Judiciary Law § 468-a [Ostroskey], 151 AD3d 1377, 1378 [3d Dept 2017]). The appointed Character and Fitness subcommittee has concluded, however, that respondent has otherwise failed to establish, by clear and convincing evidence, that he possesses the character and fitness justifying his reinstatement, or that his reinstatement would otherwise be in the public's interest (see Matter of Edelstein, 150 AD3d 1531, 1531 [3d Dept 2017]; Rules for Attorney Disciplinary Matters [22 NYCRR] § 1240.16 [a]; compare Matter of Castro, 200 AD3d 1387, 1389 [3d Dept 2021]) and, to be sure, these are the prongs of the requisite analysis which require our most careful deliberation.
On the issue of respondent's character and fitness, we note as a starting point that respondent has been disbarred in both this state and in his home jurisdiction of New Jersey as a consequence of conduct involving dishonesty, fraud, deceit or misrepresentation[*2](109 AD3d at 1045-1046; see Rules of Professional Conduct (22 NYCRR 1200.0] rule 8.4 [c]).[FN2] Quite simply, respondent defrauded his partners to a real estate transaction, made material misrepresentations to a financial institution in furtherance of that fraudulent scheme and, when his conduct was under investigation in New Jersey, respondent attempted to conceal his actions by the submission of falsified documents to disciplinary authorities. Misconduct of this deceptive nature is unquestionably among the most serious violations that an attorney can engage in, as it reflects adversely upon the personal integrity of the attorney in question and strikes at the heart of the core obligations placed upon all practitioners of the legal profession (see generally ABA Standards for Imposing Lawyer Sanctions standards 5.11 [b]; 6.1). Nor can it be overlooked that, at the time respondent engaged in the misconduct in question, he already had an established disciplinary history in both New York and New Jersey arising from similarly deceptive conduct on his part (see Matter of Paragano, 262 AD2d at 785; see generally ABA Standards for Imposing Lawyer Sanctions standards 8.1 [b]; 9.22 [a], [c], [f]).
Nonetheless, our analysis does not conclude with a consideration of the facts giving rise to respondent's disciplinary sanction, and we instead must also consider respondent's conduct and circumstances over the intervening decade since his disbarment by this Court (see Matter of Becker, 202 AD3d 1430, 1431 [3d Dept 2022]; Matter of Canale, 162 AD3d 1455, 1456 [3d Dept 2018]; see also Matter of Leo, 28 NY3d 360, 365 [2016]). To that end, respondent has testified credibly, both before the Character and Fitness subcommittee and this Court, that the events culminating in the loss of his law licenses represented the nadir of his professional and personal lives. During his personal statement before us at argument, respondent accepted full and total responsibility for the conduct which gave rise to his disbarment and reflected on his "hundreds of hours" of subsequent introspection and contrition concerning his actions. Notably, respondent's disbarment coincided with a host of additional challenges which beset respondent and his family, including the loss of his home to Hurricane Sandy and his adult child's debilitating illness. The confluence of these multiple challenges ultimately led respondent to embrace sobriety, eliminate unhealthy relationships and influences from his life and to seek therapeutic intervention. In sum, respondent claims that the challenges of the last decade have left him a changed man, and the papers submitted in support of his application evidence that he has since reconciled with formerly estranged family members, reembraced an athletic discipline which has afforded him focus, friendships and mentoring opportunities, and has generally conducted himself in a lawful manner. Character references submitted on respondent's behalf also demonstrate his philanthropic [*3]endeavors and his trustworthy reputation within his community, even amongst those who are aware of his past professional misconduct.
It is also incumbent upon respondent to demonstrate that his return to practice would be tangibly beneficial to the public at large and that his reinstatement would cause no detriment to the institutions and individuals whom the legal profession is intended to serve (see Matter of Sullivan, 153 AD3d 1484, 1484 [3d Dept 2017]). To that end, and in direct response to concerns expressed by the Character and Fitness subcommittee, respondent has demonstrated his reengagement with mental health counseling and the existence of a familial and community support network upon which he can rely. In terms of his future plans if reinstated (see Matter of Edelstein, 150 AD3d at 1531-1532), respondent has evinced an intention to serve on the advisory board of a New Jersey not-for-profit entity engaged in advocacy and educational services on behalf of critically ill children. Respondent has also indicated that he intends to resume the general practice of law, with a focus on civil rights work, and has secured the mentorship of a longtime practitioner affiliated with a New York City firm to assist him in that endeavor.
While we have concluded that respondent has established the requisite character and fitness for the practice of law and that his reinstatement would be in the public's interest, in light of the concerns expressed by the Character and Fitness subcommittee, and mindful of the nature of the misconduct which gave rise to respondent's disbarment, we deem it appropriate to condition respondent's reinstatement upon certain probationary requirements. First, during argument before this Court, respondent's counsel indicated that respondent has begun the process of engagement with the Lawyers' Assistance Program of the New York City Bar Association (hereinafter LAP). Accordingly, respondent's reinstatement is first conditioned upon his provision of proof to this Court and to petitioner, within 60 days of this Court's order, that respondent has undergone an assessment or evaluation by LAP. Furthermore, in the event that such assessment or evaluation results in the establishment of a monitoring agreement with LAP or a recommendation that respondent participate in the Association's Virtual Attorney Support Group, respondent's reinstatement is conditioned upon proof to this Court and to petitioner of respondent's execution of such monitoring agreement or of respondent's agreement to participate regularly in such Support Group. Furthermore, to the extent that respondent's counsel has indicated a willingness to provide ongoing risk management services to respondent upon his return to practice, respondent's reinstatement is further conditioned upon proof to this Court and to petitioner, within 60 days of this Court's order, of an agreement between respondent and his counsel to provide such risk management services to respondent until [*4]further order of this Court. Furthermore, the record reflects that respondent has established the groundwork for the existence of a mentoring relationship with attorney Frederick C. Biehl III of McCarter & English, LLP; respondent's reinstatement is thereby further conditioned upon the submission of a written report to this Court and petitioner by Biehl and/or his associates, on or before August 2, 2023, detailing the services and consultations provided to respondent by Biehl or other McCarter & English personnel in furtherance of respondent's resumption of the practice of law. Finally, respondent's reinstatement is conditioned upon his personal appearance before this Court, on a date to be set by the Clerk of this Court no later than February 2, 2024, whereupon he shall demonstrate his compliance with the aforementioned conditions of his reinstatement and apprise the Court concerning his resumption of the practice of law.
Garry, P.J., Lynch, Aarons, Pritzker and Fisher, JJ., concur.
ORDERED that respondent's motion for reinstatement is granted; and it is further
ORDERED that respondent is reinstated as an attorney and counselor-at-law in the State of New York, effective March 3, 2023; and it is further
ORDERED that respondent's reinstatement to the practice of law shall be subject to the conditions set forth in this decision.

Footnotes

Footnote 1: This Court had previously suspended respondent upon an earlier finding of misconduct against him in New Jersey (Matter of Paragano, 262 AD2d 785 [3d Dept 1999], reinstated 280 AD2d 872 [3d Dept 2001]).

Footnote 2: We also note that respondent's disbarment in New Jersey is permanent (see New Jersey Rules of Court rule 1:20—15A [a] [1]).