Matter of Watson (2024 NY Slip Op 04233)

Matter of Watson

2024 NY Slip Op 04233

Decided on August 15, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:August 15, 2024

PM-164-24
[*1]In the Matter of David John Watson, a Suspended Attorney. Attorney Grievance Committee for the Third Judicial Department, Petitioner; David John Watson, Respondent. (Attorney Registration No. 2597631)

Calendar Date:July 8, 2024

Before:Garry, P.J., Egan Jr., Fisher, McShan and Powers, JJ.

Monica A. Duffy, Attorney Grievance Committee for the Third Judicial Department, Albany (Michael K. Creaser of counsel), for petitioner.
Capasso & Associates LLC, Schenectady (Vincent Capasso Jr. of counsel), for respondent.

Per Curiam.
Respondent was admitted to practice by this Court in 1994. In October 2014, however, respondent was suspended from practice for two years in this state (121 AD3d 1158 [3d Dept 2014]) upon sustained allegations that he had, among other things, engaged in a conflict of interest during his representation of an elderly and vulnerable relative of his former life partner. Respondent has since twice unsuccessfully moved this Court for his reinstatement (188 AD3d 1437 [3d Dept 2020]; 206 AD3d 1132 [3d Dept 2022]). Respondent now again moves for his reinstatement by motion marked returnable July 8, 2024. Petitioner has been heard in response to his reinstatement motion and opposes same.
Respondent was charged via petition of charges in October 2013 with engaging in a conflict of interest, failing to provide competent representation, failing to provide sufficient information to his client and engaging in misleading and deceptive conduct in his representation (see Rules of Professional Conduct [22 NYCRR 1200.0] rules 1.7 [a] [2]; 1.8 [c] [1]; [2]; 1.1 [a]; 1.4 [b]; 8.4 [c], [d], [h]). The subject client was the uncle of respondent's significant other (see 121 AD3d at 1158). Respondent thereafter appeared before a Referee who found the testimony of respondent, as well as that of his significant other, to not be credible and that his acts involved "stupidity by respondent and [his significant other] with just a dash of venality thrown in for good measure." The Referee further found that "respondent's behavior preyed upon an aged, infirm man." This Court thereafter confirmed the Referee's finding, sustaining all five charges and suspending respondent for a period of two years.
Respondent first moved for his reinstatement in May 2019; however, upon our referral, a subcommittee on the Committee of Character and Fitness unanimously recommended that his application be denied after finding that respondent's "responses to its questions about his misconduct lack[ed] in candor[,]" that his "explanations . . . lacked credibility" and ultimately that he "did not convince the Subcommittee that he . . . [understood] the nature and gravity of his misconduct, or the ethical rules." We thereafter denied the motion based on his failure to prove the requisite showing of his character and fitness (see 188 AD3d at 1438). Respondent again moved for his reinstatement in December 2021; however, the motion was again denied, this time because respondent was delinquent in his attorney registration obligations, rendering the application "deficient on its face" (206 AD3d at 1133).
" 'An attorney seeking reinstatement from suspension must establish, by clear and convincing evidence, that he or she has complied with the order of suspension and this Court's rules, that he or she has the requisite character and fitness to practice law, and that reinstatement would be in the public's interest' " (Matter of Attorneys in Violation of Judiciary Law § 468-a [Andison], 211 AD3d 1307, 1308 [3d Dept [*2]2022], quoting Matter of Edelstein, 150 AD3d 1531, 1531 [3d Dept 2017]; see Matter of Attorneys in Violation of Judiciary Law § 468-a [Nenninger], 180 AD3d 1317, 1317-1318 [3d Dept 2020]; Rules for Atty Disciplinary Matters [22 NYCRR] § 1240.16 [a]). In addition to this substantive showing, an applicant for reinstatement must also satisfy certain threshold procedural requirements. Procedurally, and as relevant here, an attorney suspended for a term of greater than six months must submit a duly-sworn affidavit in the form provided in appendix C to the Rules for Attorney Disciplinary Matters (22 NYCRR) part 1240 (see Rules for Atty Disciplinary Matters [22 NYCRR] § 1240.16 [b]). Additionally, the attorney must provide proof that, no more than one year prior to the date the application is filed, he or she has successfully completed the Multistate Professional Responsibility Exam (see Rules for Atty Disciplinary Matters [22 NYCRR] § 1240.16 [b]).
Initially, we find that respondent has met the threshold procedural requirements, inasmuch as he properly submitted a sworn affidavit in the form of appendix C, an affidavit of compliance and proof of his successful passage of the Multistate Professional Responsibility Exam. As such, we turn our attention to his substantive showing and an assessment of respondent's character and fitness as well as the public's interest in his reinstatement.
"In assessing whether an attorney has satisfied his or her burden concerning [character and fitness and the public's interest in his or her reinstatement], we consider both the conduct that led to the attorney's suspension, and his or her conduct following the order of suspension" (Matter of Shmulsky, 219 AD3d 1045, 1046 [3d Dept 2023] [citations omitted]; see Matter of Castro, 200 AD3d 1387, 1389 [3d Dept 2021]). Here, it is undisputed that respondent's past misconduct took advantage of an "elderly and vulnerable relative of his former life partner" (206 AD3d at 1132; 188 AD3d at 1438). However, as stated in a character affidavit in support of his reinstatement, respondent has "deep regrets for violating ethical standards" and his mistakes were borne out of "practicing in a difficult area of law of which he had no experience and becoming involved in a case involving his long-time domestic partner." Respondent notes that he has now "had the opportunity to reflect on the arrogance and naivete [he] exhibited during [that] time." As to respondent's conduct following this Court's suspension, respondent has demonstrated that he has worked consistently as a principal for a management consulting business since 2015 as well as in real estate since 2016. To this end, the real estate broker with whom he associates describes respondent as "a trustworthy and honest member of society, with a reputation for truth and veracity." Based on these submissions, we find that "respondent has genuinely expressed remorse for his misconduct, understands the impact his misconduct had on his client [*3]and on his practice of law, and has further isolated the factors that led to his misconduct" (Matter of Shmulsky, 219 AD3d at 1046; see Matter of Marshall, 200 AD3d 1300, 1302 [3d Dept 2021]).
Turning next to the public's interest in respondent's reinstatement, respondent has engaged with a local attorney and plans to return to practice in that attorney's firm, primarily in the areas of corporate and transactional matters, commercial real estate and not-for-profit corporate law, should he be reinstated. To this end, respondent's colleagues vouch for his experience in these fields and the impact he could have on the nonprofit community. As to other practice areas, respondent "aver[s] to never become involved with a family situation of any kind ever again because that stupidity caused [him] to forget [his] sacred obligations as an attorney and counsel-at-law." We therefore find that his reinstatement would provide a tangible benefit to the public inasmuch as he plans to engage with the not-for-profit communities and avoid practicing in areas that led to his initial misconduct (see Matter of Marshall, 200 AD3d at 1302). Accordingly, we find that respondent has established his entitlement to reinstatement. However, to ensure that the public is more adequately protected, we condition his reinstatement on certain conditions to act as additional safeguards (see Matter of Shmulsky, 219 AD3d at 1047). Notably, respondent suggests in his supporting affidavit that conditional reinstatement would help him to "gain the public's trust in [his] practice and [his] ability to act as their attorney." As such, we condition respondent's reinstatement upon him (1) not engaging in the solo practice of law, opening his own law practice or becoming a partner in any law practice in the State of New York; (2) proposing to the Court, within 30 days of this decision, an attorney in good standing, with no less than five years of practice in New York State, to serve as his qualified mentor and thereafter submit quarterly reports to the Court, on notice to petitioner; and (3) refraining from practice within the areas of wills and estate planning. We impose these conditions for a period of three years, whereupon respondent may move this Court to terminate the foregoing conditions.
Garry, P.J., Egan Jr., Fisher, McShan and Powers, JJ., concur.
ORDERED that respondent's motion for reinstatement is granted; and it is further
ORDERED that respondent is reinstated as an attorney and counselor-at-law in the State of New York, effective immediately; and it is further
ORDERED that respondent's reinstatement to the practice of law shall be subject to the conditions set forth in this decision; and it is further
ORDERED that respondent may move this Court to terminate the foregoing conditions after August 15, 2027.