Matter of Kotsogiannis (2024 NY Slip Op 04436)

Matter of Kotsogiannis

2024 NY Slip Op 04436

Decided on September 12, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:September 12, 2024

PM-182-24
[*1]In the Matter of Christos P. Kotsogiannis, a Disbarred Attorney. (Attorney Registration No. 4530465.)

Calendar Date:July 22, 2024

Before:Garry, P.J., Egan Jr., Reynolds Fitzgerald, Ceresia and Mackey, JJ.

Monica A. Duffy, Attorney Grievance Committee for the Third Judicial Department, Albany (Robert M. Beyer of counsel), for Attorney Grievance Committee for the Third Judicial Department.
Mischel & Horn, PC, New York City (Richard E. Mischel of counsel), for respondent.

Per Curiam.
Respondent was admitted to practice by this Court in 2007, following his 2003 admission in New Jersey, where he formerly maintained a law practice. In May 2010, the Supreme Court of New Jersey disbarred respondent upon his consent and his admission that he had knowingly misappropriated client funds (202 NJ 27 [2010]). Thereafter, this Court similarly disbarred respondent by September 2010 order (76 AD3d 1114 [3d Dept 2010]). Respondent now applies to this Court for his reinstatement by motion. Petitioner opposes respondent's motion and respondent has been heard in reply. Following our initial consideration, we referred the matter for hearing and report by a Character & Fitness subcommittee, and, in its June 25, 2024 report to this Court, the subcommittee has recommended respondent's reinstatement subject to certain conditions. Respondent was heard in response to the subcommittee report on July 9, 2024, noting no objections to the recommended conditions, and petitioner did not submit comment. Accordingly, respondent's application for reinstatement is now ripe for our final determination.
At the Character & Fitness subcommittee hearing, respondent presented opening remarks, was questioned both by the subcommittee members and his counsel, offered character testimony from two New York attorneys and provided closing remarks. Initially, the subcommittee addressed the omissions present in respondent's reinstatement application — which included his failure to disclose certain associated business entities and his failure to address his future plans should he be reinstated. As to these omissions, the subcommittee found they were "adequately addressed" in the hearing, noting that respondent's counsel took most, if not all, of the blame for his omissions. The subcommittee also highlighted respondent's testimony regarding his personal struggles at the time of the misconduct and his overcoming of same. To this end, the subcommittee found that respondent had proved himself to be capable of living in a responsible manner by his holding of a "steady job with ever-increasing amounts of responsibility" as exemplified by his employer's entrustment of respondent with a power of attorney in their absence. The subcommittee also recounted the live character testimony from two New York admitted attorneys. They noted that one witness was "willing to risk his substantial professional reputation in order to testify on behalf of respondent" and the other describing respondent as "a man with integrity." The subcommittee also considered the character letters that respondent provided. The subcommittee found that, although respondent "initially seemed ambivalent about his future goals for legal practice[,]" he described the importance of reentering the profession and helping other similarly-situated attorneys, even suggesting that he would donate his time to represent them pro bono. Ultimately, the subcommittee unanimously recommended respondent's reinstatement.
It is well settled [*2]that "every respondent seeking reinstatement from disbarment must establish, by clear and convincing evidence, (1) that he or she has complied with the order of disbarment and the applicable rules of the Court, (2) that he or she possesses the requisite character and fitness for the practice of law, and (3) that his or her reinstatement would be in the public interest" (Matter of Castro, 200 AD3d 1387, 1389 [3d Dept 2021] [internal quotation marks, brackets and citations omitted]). Initially, we note that respondent has met the first threshold of the required three-part test inasmuch as he submitted the appropriate form affidavit in support of his motion and appended the necessary documents for our consideration (see Rules for Atty Disciplinary Matters [22 NYCRR] § 1240.16[b]; part 1240, appendix C). Further, while respondent did not timely file an affidavit of compliance as required under Rules for Attorney Disciplinary Matters (22 NYCRR) § 1240.15 (f), there is no indication that he was practicing law in violation of this Court's order of disbarment and, as such, this defect is cured by respondent's attestations to that effect in his instant motion papers (see Matter of Attorneys in Violation of Judiciary Law § 468-a [Lefkowitz], 213 AD3d 1072, 1074 [3d Dept 2023]).
Turning next to respondent's character and fitness and the public interest in his reinstatement, we have repeatedly held that such inquiries are "fact-specific and necessarily consider both the respondent's conduct that led to his or her disciplinary sanction as well as the conduct that followed the disciplinary order" (Matter of Castro, 200 AD3d at 1389; see Matter of Shmulsky, 219 AD3d 1045, 1046 [3d Dept 2023]; Matter of Paragano, 213 AD3d 1023, 1025 [3d Dept 2023]). To this end, "a respondent should address those factors that led to his or her misconduct in the first place" and "must 'provide assurances that no detriment would inure to the public by reason of the attorney's return to practice, and that his or her reinstatement would be of some tangible benefit to the public' " (Matter of Becker, 202 AD3d 1430, 1431 [3d Dept 2022], quoting Matter of Sullivan, 153 AD3d 1484, 1484 [3d Dept 2017]).
Here, respondent has addressed the factors that led to his misconduct before the subcommittee and also provided character testimony before the subcommittee from a New York attorney and long-time friend who "described respondent's remorse for his previous actions and the grief it caused himself, his family and his community." Further, by correspondence dated May 8, 2023, his employer touts that respondent "has demonstrated outstanding character and is a professional in his position and responsibilities." Respondent stated before the subcommittee that he "regret[s] what [he] did every day of [his] life" and noted that this reinstatement, and the ensuing appearance before the subcommittee is "probably the most important moment of [his] life." Overall, we find, as the subcommittee determined[*3], that "there are not only no causes for concern, but there is also substantial material showing upstanding moral character over the spectrum of respondent's life activities."
As to the public's interest in respondent's reinstatement, we give considerable credence to respondent's character witnesses, who have stated that "respondent's skills as [an] advocate for others — as advocating is [a] core function of an attorney — would benefit the bar" and that "the public and the profession benefits from having good attorneys, and that as someone who recognizes their mistakes of the past and learned lessons from that, respondent would, if reinstated, make a good and ethical attorney." To that end, it is noted that respondent has stayed abreast with developments in the profession since being disbarred, having been issued 30 continuing legal education credits — 12.5 of which were credited to the subject of ethics and professionalism — and states that he is now "a little bit obsessive with knowing the nuances of the ethics rules." Respondent also expressed that he would like to help others that find themselves in situations similar to the one he experienced, potentially even representing them pro bono. Given respondent's efforts, as well as his intentions to help his community, we find that his reinstatement would not be a detriment to the public (see Matter of Hogan, 220 AD3d 998, 1000 [3d Dept 2023]; Matter of Shmulsky, 219 AD3d at 1047). However, to ensure that the public is more adequately protected and that "no detriment will inure to the public as a consequence of his reinstatement," we agree with the subcommittee that an additional safeguard is necessary (Matter of Shmulsky, 219 AD3d at 1047). Accordingly, we reinstate respondent to the practice of law, effective immediately, upon the condition that respondent not be the sole signatory of any special account established for the handling of funds incident to his practice of law (see generally Rules of Prof Conduct [22 NYCRR 1200.0] rule 1.15). Respondent may apply to this Court to terminate this condition of his reinstatement after a period of two years from the date of this order.
Garry, P.J., Egan Jr., Reynolds Fitzgerald, Ceresia and Mackey, JJ., concur.
ORDERED that respondent's motion for reinstatement is granted; and it is further
ORDERED that respondent is reinstated as an attorney and counselor-at-law in the State of New York, effective immediately; and it is further
ORDERED that respondent's reinstatement to the practice of law shall be subject to the condition set forth in this decision; and it is further
ORDERED that respondent may move this Court to terminate the foregoing condition after September 12, 2026.